## PAUL A. SEEGER *vs.* EBEN B. HUNTING.

*Equity jurisdiction—Sale of Trust property—Afterborn children.*

Where trustees for the benefit of a married woman and her children born and to be born, by purchasing an unimproved lot, as an investment, unintentionally committed a *devastavit*, a Court of equity, prior to the Act of 1862, ch. 156, authorizing the sale of land on application of any of the parties in interest, if all the parties in being were parties to the proceeding, and if it should appear to be advantageous to the parties concerned, had jurisdiction to order a sale of the lot for the purpose of relieving the trustees and preserving the trust; and the title of the purchaser is not affected by the fact that after-born children have an interest.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from a *pro forma* decree of the lower Court (DENNIS, J.,) adjudging that Eben B. Hunting, the plaintiff, was entitled to the relief prayed for in his bill.—the specific performance of an agreement for the sale of a house and lot on Charles street, in the

Seeger *vs.* Hunting.

City of Baltimore,—that the title to said property was good and marketable and in fee simple; and that upon the tender by the plaintiff to Paul A. Seeger, the defendant, of a deed in fee, executed in usual form by the plaintiff, the defendant should pay to the plaintiff the purchase money for said property—the sum of fourteen thousand dollars, with interest from the 17th of January, 1893. The case is stated in the opinion of this Court.

The cause was argued before BRYAN, FOWLER, ROBERTS, McSHERRY, and BRISCOE, J.

*James McColgan,* for the appellant.

*George R. Willis,* and * *Samuel Snowden,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This case is a plain one, and presents no difficult questions for our consideration. The bill was filed for the specific performance of a contract, for the sale of a house and lot on Charles street, in the City of Baltimore.

The record shows that John Gillingham, of Baltimore, died, leaving a will dated the 6th day of June, 1848, duly executed to pass real estate, which contains this clause:

"I give and devise to my friends, Edward Jessop, Thomas Russell, and Benjamin Rush Roberts, and the survivors and survivor of them, and the heirs, executors, and administrators of the survivor, all my estate, effects and property, in trust, nevertheless, for the uses and purposes hereinafter mentioned, that is to say: In trust that the same be preserved and kept together, and any portion thereof that may be in cash vested in ground

--------
- The Court declined to hear Mr. Snowden.

rents, or placed out at interest on good mortgage secu-rity of real or leasehold property, from time to time so that my beloved wife, Mary Gillingham, during the res-idue of her natural life, if she so long remains my widow, be permitted and suffered to hold, use, occupy, and en-joy the same, and the rents, interest and profits thereof, to receive, take, and apply to her own use and benefit, and her receipts alone shall be good and effectual acquit-tances and discharges for such rents, interest and profits; and from and immediately after the decease of my said wife, or her intermarriage with any other person, which-ever shall first happen, then in trust, that my daughter, Mary G. Tyson, if she is then living, be permitted and suffered to hold, use, occupy and enjoy the same estate and property during the residue of her natural life. and the rents, interest, and profits thereof to receive, take, and apply to her own separate use and benefit, without being subject to the control, power, or disposal of her present or any future husband, or liable for the pay-ment of his debts, or bound for the fulfilment of his con-tracts or engagements; and the receipts of the said Mary G., whether she be *sole* or *covert*, shall be good and sufficient releases and discharges for such rents, interest, and profits; and from and after the decease of my said daughter, Mary G., or in case of her decease before my said beloved wife, then from and immediately after the death of the latter, in trust, that the said principal estate shall go to and become the property of the child my said daughter now has, and the child or children she may hereafter have, his, her or their heirs, execu-tors, administrators, and assigns forever, if more than one, to be equally divided between them as tenants in common, share and share alike; the issue of any deceased child of my said daughter, if any such issue there should be living, to take and have the part or share only to which the parent of such issue would, if living,

be entitled. And in the event of the decease of any of the children of the said Mary G.. under age, and without issue living at the time of his, her, or their respective deaths, the part or share of him, her or them so dying shall go to the survivors or survivor of them, and the heirs, executors, administrators, and assigns of such survivors or survivor, and to the issue then living of any deceased child or children, and the heirs, executors, administrators, and assigns of such issue, said issue to take the share or shares to which such deceased child or children would, if living, be entitled." It appears from the final account that the executors under the will distributed to the trustees personal property, including cash, to the amount of $17,758, and of this amount the trustees invested the sum of $2,500 in the purchase of a ground rent annuity of $150. Afterwards, however, the ground rent being unpaid, the trustees instituted an action of ejectment against the lessee of the lot for non-payment of the rent, and ejected the lessee therefrom, whereby they became seized of an absolute fee simple interest therein.

Subsequently, they ascertained that the investment which they had made was one not contemplated by the will, in that they had invested in an unimproved lot which was not worth the amount invested therein, and there was an application by them to a Court of Chancery for relief.

To this suit the life tenant and all of the remaindermen then in being were parties. And on the 19th of May, 1857, a decree was passed authorizing and directing the trustees to sell the property, as though it was held by them in their own right, without prejudice, however, to the claim of the *cestuis que trust* upon the trustees for the sum paid by them out of the trust funds, which had been invested by them. There was afterwards, by a decree of the Court, an account stated be-

tween these trustees and the trust estate, wherein it appeared that the trustees had charged themselves with property and cash exceeding the amount of the value of the estate which had been turned over to them by the executors, and on application they were relieved from the trust.

It is admitted that the appellee is in actual possession of the property, and holds title through various *mesne* conveyances and the deed from Basil Gordon and others to him.

But it is contended upon the part of the appellant that under the will of John Gillingham, the children of his daughter, Mrs. Tyson, took vested estates in this land, and there was no jurisdiction in a Court of equity to sell the interests of unborn children prior to the Act of 1862; that only two of the children were parties to the proceeding under which the sale was made, and through which the appellee claims title; that all the other children of Mrs. Tyson, of whom three were born since the passing of the decree in the case, are now entitled to fee simple interests in this lot of ground, now in controversy, and consequently the appellee cannot convey a good and marketable title thereto.

It is clear, we think, that the trustees had committed a *devastavit* by the investment which was made, and had therefore rendered themselves liable for the misapplication of the fund which they had taken out of the trust. And this case, therefore, falls within the reasoning of the case of *Wayman and Stockett vs. Jones, and others*, 4 *Md. Chan. Dec.*, 501, where it was held, that if any portion of the trust fund has been misapplied or destroyed, it is the duty of the trustee to communicate the fact to the Court and ask its sanction of the measures adopted to obtain redress.

And the same doctrine is fully maintained in the case of *Ringgold vs. Ringgold*, 1 *H. & G.*, 25. Indeed, unless

a Court of equity could have authorized a change of property, situated as this was, a trustee who innocently makes a mistake in investing trust property would be entirely without relief. Without stopping to multiply authorities upon this subject, we think it is manifest that a Court of equity had jurisdiction in this case, for the purpose of relieving the trustees and of preserving the trust.

The remaining objection that the deeds of two of the grantors, Prior and Zuckschwerdt did not contain evidence that they were unmarried, is equally as untenable. The proof shows conclusively that they were unmarried at the time.

The decree will be affirmed.

*Decree affirmed.*

(Decided 21st June, 1893.)